**Fill in this information to identify the case:**

Debtor Name: Full-Circle Athlete, LLC

United States Bankruptcy Court for the: Northern    District of: Florida
                                                                (State)

Case number: 23-40240-KKS

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11    02/20

Full-Circle Athlete, LLC's    **Plan of Reorganization, Dated**    10/03/2023

In a Plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below is used for that purpose.

**Background for Cases Filed Under Subchapter V**

### A. Description and History of the Debtor's Business

The Debtor is a Florida Limited Liability Company that owns and operates a high-end sports training facility in Tallahassee for young athletes, professionals, and other individuals seeking to maximize their fitness and athletic potential. The Debtor is a franchisee of D1 Sports Franchise LLC, with exclusive rights to own and operate D1 Training Facilities in Tallahassee, Florida and surrounding areas. The Debtor's facility operates using the name D1 Tallahassee and is located at 1706 Capital Circle NE, Suite #8, Tallahassee, Florida 32308. The Debtor's facility is leased from Atway Properties, LLC.

The Debtor filed this Chapter 11 case to stabilize its operations and to reorganize its debts owing to its creditors. The Debtor's Chapter 11 Plan seeks to maximize the value of its assets and operations by seeking a sale of all assets and operations with several contingencies to maximize the value of the enterprise for all stakeholders in the event a sale is not feasible or workable due to factors beyond the Debtor's control.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit **B**.

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business. The Plan Proponent has provided projected financial information as Exhibit **C**. The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $ $57,058.56. The final Plan payment is expected to be paid on 10/03/2027.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

Debtor Name    Full-Circle Athlete, LLC                                            Case number 23-40240-KKS

# Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Full-Circle Athlete, LLC (the *Debtor*) from the proceeds of the sale of its assets and operations or from the future cash flow of the business from continued operations.

This Plan provides for:

- [ 1 ] classes of priority claims;
- [ 1 ] classes of secured claims;
- [ 1 ] classes of non-priority unsecured clams; and
- [ 1 ] classes of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately [ 02 ] cents on the dollar. This Plan also provides for the payment of administrative and priority claims. All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

# Article 2: Classification of Claims and Interests

2.01 **Class 1** ............................... All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

2.02 **Class 2** ............................... The claim of [ Celtic Bank ], to the extent allowed as a secured claim under § 506 of the Code.

2.03 **Class 3** ............................... All non-priority unsecured claims allowed under § 502 of the Code.

2.04 **Class 4** ............................... Equity interests of the Debtor.

# Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

3.01 **Unclassified claims** — Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02 **Administrative expense claims** — Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Debtor Name  Full-Circle Athlete, LLC                           Case number  23-40240-KKS

| | | |
|---|---|---|
| 3.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid over a period of 48 months in regular quarterly installment payments, the allowed amount of each priority tax claim of a total value, as of the effective date of the plan, equal to the allowed amount of such claim. The Debtor may pre-pay and satisfy Section 507(a)(8) by paying the allowed amount of priority tax claims on the effective date or otherwise by paying the claims with applicable statutory interest on or before the 48th month after the effective date |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | **Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. |

### Article 4: Treatment of Claims and Interests Under the Plan

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☒ Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed by a final non-appealable order. |
| Class 2 – **Secured claim** of Celtic Bank | ☒ Impaired<br>☐ Unimpaired | Class 2 is impaired by this Plan.  The allowed amount of Celtic Bank's secured claim under Section 506 of the Bankruptcy Code, less the surcharge defined in Article 10, shall be paid on the effective date or over 48 months with 4% interest.  The balance of Celtic's claim will be a Class 4 unsecured claim. |
| Class 3 – **Non-priority unsecured creditors** | ☒ Impaired<br>☐ Unimpaired | Class 3 is impaired by this Plan.  The Debtor will pay a total of $15,000 with no interest on a pro rata basis to unsecured claims on the effective date over 48 months via quarterly payments of $937.50 starting 3 months after the effective date. |
| Class 4 - **Equity security holders of the Debtor** | ☒ Impaired<br>☐ Unimpaired | Class 4 is impaired by this Plan.  The class 4 holders will not receive any distributions until the Debtor has fulfilled its obligations to Classes 1-3 holders. |

### Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed claim** | A *disputed claim* is a claim that has not been allowed or disallowed, and as to which either: |
| | | (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or |
| | | (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed. |
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

Debtor Name  Full-Circle Athlete, LLC                                    Case number 23-40240-KKS

| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The time for the Debtor to assume and assign, the following executory contracts and unexpired leases is extended to the effective date:<br>1) The Debtor's lease with Atway Properties, LLC for the premises located at 1706 Capital Circle NE, Suite #8.<br>2) D1 Sports Franchise Agreement |
|---|---|---|
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br><br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan. |

### Article 7: Means for Implementation of the Plan

See Exhibit  A 

### Article 8: General Provisions

| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. See Exhibit  A . |
|---|---|---|
| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of  Florida  govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.] |
| [8.07 | **Corporate governance** | The Reorganized Debtor's Articles shall prohibit the issuance of nonvoting equity securities as part of the reorganization. The Bylaws of the reorganized Debtor shall state that the purpose of consummating and implementing this Plan |

| Debtor Name | Full-Circle Athlete, LLC | Case number | 23-40240-KKS |
|---|---|---|---|

[8.08]  **Retention of Jurisdiction**   The Bankruptcy Court shall retain jurisdiction to decide and interpret any matters in conjunction with this Plan.

### Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

    (i) imposed by this Plan; or
    (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

    (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Debtor Name  Full-Circle Athlete, LLC                        Case number 23-40240-KKS

### Article 10: Other Provisions

See Exhibit  A

Respectfully submitted,

Debtor Name  Full-Circle Athlete, LLC                              Case number 23-40240-KKS

✘ /s/ John Simmons                                John Simmons, President
[Signature of the Plan Proponent]                 [Printed Name]

✘ /s/ Michael H. Moody                            Michael H. Moody, Esq.
[Signature of the Attorney for the Plan Proponent]  [Printed Name]

## EXHIBIT A

## CHAPTER 11 SUBCHAPTER V PLAN
## SUPPLEMENT

Full-Circle Athlete, LLC, filed its Chapter 11 Plan utilizing Official Form 425A which was amended in response to the enactment of the Small Business Reorganization Act of 2019, Pub. L. No. 116-54, 133 Stat 1079. Bankruptcy Rule 9009 governs the use of forms in bankruptcy cases and proceedings. Official Bankruptcy Forms are approved by the Judicial Conference of the United States Courts. The use of Official Bankruptcy Forms is required with certain exceptions, and the ability to modify Official Forms is limited. Rule 9009 provides "The Official Forms prescribed by the Judicial Conference of the United States shall be used without alteration, except as otherwise provided in these rules, in a particular Official Form, or in the national instructions for a particular Official Form. Official Forms may be modified to permit minor changes not affecting wording or the order of presenting information, including changes that (among other things) expand the prescribed areas for responses in order to permit complete responses,… delet[ing] spaces not needed for responses, or delet[ing] items requiring detail in a question or category if the filer indicates …that there is nothing to report on…." Fed. R. Bankr. P. 9009(a). Consistently with Rule 9009, this Plan Supplement seeks primarily to expand the prescribed areas for responses to permit complete responses.

### ARTICLE 7 MEANS FOR IMPLEMENTATION OF THE PLAN

Full-Circle Athlete, LLC, will implement its Plan using a multi-phased approach intended to ensure that the maximum value is obtained under the Plan for the benefit of its creditors and other constituents.

First, the Debtor will make diligent efforts to market its business as a going concern free and clear of all liens, claims, and encumbrances, with any liens attaching only to the proceeds of the sale. To maximize its prospects of selling its business as a going concern, the Debtor has agreed to retain the services of a business broker named the Weeks Auction Group. The marketing phase of the Debtor's restructuring effort will commence immediately upon the filing of the Plan of Reorganization and continue for up to six months. The marketing phase was enabled by an Agreement the Debtor recently reached with its landlord, Atway Properties, in the *Agreed Order with Atway Properties, LLC* (D.E. 56). Pursuant to the Agreed Order, the Debtor will receive a concession of significantly reduced rent for up to six-months provided that Atway has rights to consent to any future assignment of the Debtor's lease. The sale of the Debtor's operations is contingent on a number of factors beyond the Debtor's control, including Atway's acceptance of any proposed deal partner, the Court's acceptance and approval of any proposed terms of sale, and D1 Sports Franchise, LLC's acceptance of a new operator for the D1 Tallahassee operations.

If the Debtor is unable to sell its business as a going concern within the six-month marketing period, or a proposed sale as a going concern is not feasible due to factors beyond the

Debtor's control, the next phase of the Debtor's Plan allows the Debtor to continue its business operations.  If the Debtor elects to continue its operations at the end of the six-month marketing period, it must pay the Weeks Auction Group an administrative claim on the effective date equal to the greater of $35,000.00 or the quantum meruit value of the time expended by the Broker during the marketing phase, plus the repayment of all of the Broker's out-of-pocket expenses.  The Debtor must also allow Celtic Bank to retain its liens securing its secured claim, and pay Celtic Bank deferred cash payments totaling at least the allowable amount of the claim, of a value, as of the effective date of the plan, of at least the value of Celtic Bank's interest in the estate's interest in the properly securing the liens.  The value of Celtic Bank's interest in the estate's interest in the property securing the liens is the subject of a Section 506 Motion to Determine Secured Status which is being filed contemporaneously with the Debtor's Plan.  Pursuant to Section 1191(c)(2)(B) of the Bankruptcy Code, the Debtor's Plan also provides that the value to be distributed under the Plan is not less than the projected disposable income of the Debtor for the three-year period beginning on the date on which the first distribution is due under the plan.

Finally, if the Debtor is both unable to sell its business as a going concern and unable or unwilling to continue operations for any reason, the Debtor may elect to liquidate.  In the event the Debtor liquidates, the Weeks Auction Group will be engaged to facilitate a fair and expeditious auction of all or substantially all of the Debtor's assets.  The proceeds of the sale of assets will be paid in the manner provided for by the Plan subject to the Surcharge outlined further in Article 10 of the Plan.

Under each of the foregoing scenarios, the Plan Administrator will disburse funds in accordance with this Plan of Reorganization on and after the effective date.

### ARTICLE 8 GENERAL PROVISIONS:

8.01 Definitions and Rules of Construction: For purposes of this Plan, the following definitions shall apply unless the context clearly requires otherwise:

**Administrative Claim** shall mean any Claim for the payment of an Administrative Expense.

**Administrative Claims Bar Date** shall mean the date that is thirty (30) days after notice of entry of the Confirmation Order.  All pofessionals seeking compensation or reimbursement of professional services rendered before the effective date must file applicants for final allowance and payment no later than forty-five (45) days after the effective date.

**Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 Case that is allowed under §§ 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, request, or motion seeking such cost or expense in the Chapter 11 Case on or before the applicable Administrative Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the estate or operating the business of the Debtor in Possession (including wages, salaries, or commissions for services

rendered) incurred after the Petition Date, (ii) any post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession in the ordinary course of its business, (iii) any claim granted administrative priority status by a Final Order of the Bankruptcy Court, and (iv) compensation or reimbursement of expenses of professionals awarded or Allowed pursuant to an order of the Bankruptcy Court under §330(a) or 331 of the Bankruptcy Code, 28 U.S.C. §§ 1911-30; and (v) any and all other costs or expenses of administration of the Chapter 11 Case that are Allowed by a Final Order of the Bankruptcy Court; provided, however, that notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any transferred claim, any Disallowed Claim, or unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 4.

**Allowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest (a) proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (i) as to which no objection has been filed by the Objection Deadline, unless such Claim or Interest is to be determined in a forum other than the Bankruptcy Court, in which case such Claim or Interest shall not become allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or (ii) as to which an objection was filed by the Objection Deadline, to the extent Allowed by a Final Order; (b) Allowed by a Final Order; or (c) listed in the Debtor's schedules filed in connection with this Chapter 11 Case and not identified as contingent, unliquidated, or disputed.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Priority Tax Claim** shall mean a Priority Claim pursuant to 11 U.S.C. § 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Bankruptcy Code** shall mean 11 U.S.C. §101 *et seq.*, and any amendments thereto.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Northern District of Florida, Tallahassee Division, and any Bankruptcy Court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom.

**Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), as amended, and as supplemented by the Local Rules of Practice and Procedure of the Bankruptcy Court, as amended ("The Local Rules").

**Bar Date** shall mean either September 30, 2023, for non-governmental units or January 2, 2024, for governmental units, the dates fixed by order of the Bankruptcy Court by which proofs of Claim or Interest must be filed against the Debtor.

**Business Day** shall mean any day except Saturday, Sunday, or any legal holiday.

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits or other similar items.

**Causes of Acton** shall mean the following actions and causes of action and the proceeds thereof, whether or not commenced as of the date hereof, all of which shall be vested in the Debtor: (a) all proceedings, commenced or to be commenced pursuant to Bankruptcy Code § 502 and §§ 544-551 (or equivalent provisions of applicable non-bankruptcy law); and (b) all claims against Creditors or Holders of Interests, parties having dealings, relationships, or transactions with or related to the Debtor, and any party named or identified in the Debtor's schedules, statement of financial affairs, or any pleadings filed in this Chapter 11 case; and (c) the Debtor's right of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity and any other indirect claim of any kind whatsoever.

**Chapter 11 Case** shall mean the Chapter 11 reorganization case of the Debtor pending in the Bankruptcy Court, specifically Case No. 23-40240-KKS under the caption *In re: Full-Circle Athlete, LLC*.

**Claims Objection Bar Date** shall mean the date by which objections to Claims and Interests must be filed with the Bankruptcy Court; to wit, 60 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**Class** shall mean a group of Claims or Interests substantially similar to each other as classified under this Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, Class 4 Claim,, *etc.* shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereto.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to § 1191 of the Code.

**Confirmation Date** shall mean the date the Confirmation Order becomes final and non-appealable.

**Confirmation Hearing** shall mean the hearing set by the Bankruptcy Court for the hearing on confirmation of the Debtor's Plan.

**Confirmation Order** shall mean the order entered by the Bankruptcy Court confirming the Plan.

**Consensual Plan** shall mean a plan as to which each Class of Claims has voted to accept the plan. Whether a Class of Claims has voted to accept a plan shall be determined in accordance with Section 1126 of the Bankruptcy Code (requiring at least two-thirds in amount and at least half in number of the Allowed Claims in such Class).

**Debtor** shall mean Full-Circle Athlete, LLC.

**Debtor-in-Possession** shall mean Full-Circle Athlete, LLC, as Debtor-in-possession in this Chapter 11 Case.

**Disallowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest to the extent fourteen (14) days have expired since the Claim or Interest was disallowed by order of the Bankruptcy Court, unless proper application for a stay of such order has been made within such fourteen (14) day period and granted, in which case the Claim or Interest shall be disallowed thirty (30) days after entry of the order disallowing such Claim or Interest, unless prior to the expiration of such period, a stay is obtained with respect to the order disallowing the Claim or Interest.

**Disposable Income** shall mean the income that is received by the Debtor and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor. Disposable Income does not include the WCR. Specifically, Disposable Income shall be calculated on a rolling cash basis at the end of the quarter by subtracting the WCR from the total cash funds available on deposit.

**Disputed Claim** shall mean any Claim other than a Disallowed Claim that has not been Allowed by an order of the Bankruptcy Court and as to which (a) a Proof of Claim has been filed with the Bankruptcy Court or is deemed filed under applicable law or order of the Bankruptcy Court, and (b) an objection has been or may be timely filed or deemed filed under applicable law and any such objection has not been: (i) withdrawn; (ii) overruled or denied by an order of the Bankruptcy Court; or (iii) granted by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall also mean a Claim that has not been Allowed by an order of the Bankruptcy Court, whether or not an objection has been or may be timely filed, if (a) the amount of Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Debtor's schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Debtor's schedules or set forth in the Plan, (c) any corresponding Claim has been scheduled in the Debtor's schedules as disputed, contingent, or unliquidated, (d) no corresponding Claim has been scheduled in the Debtor's schedules, or (e) such claim is reflected as unliquidated or contingent in the Proof of Claim filed with respect thereof. To the extent an objection relates to the allowance of only a part of the Claim, such Claim shall be a Disputed Claim only to the extent of the objection. To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Debtor's schedules, such Claim shall be a Disputed Claim

only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled.

**Distribution** shall mean the Distribution to the holders of Allowed Claims.

**Distribution Date** when used with respect to each Claim or Interest shall mean the date on which distributions to the Holder of the Claim will be made in accordance with the Plan.

**Effective Date** shall mean the first business day following the date that is 14 days after the entry of the confirmation order. At the Debtor's option, the effective date shall be 14 days after the conclusion of the marketing period provided for in the means of plan implementation. If, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**Equity Interest** shall mean the interests in the Debtor held by Holders of existing common stock, including any and all options, warrants, or similar instruments for the acquisition of shares of existing common stock of the Debtor.

**Final Order** shall mean (a) an order, judgment, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Chapter 11 Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and to which (i) no appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has been taken and is pending and the time for filing such appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

**Fiscal Year** shall mean the fiscal year of the Debtor, which commences on the first day of January and concludes on the final day of December in that same calendar year.

**Governmental Authority** shall mean any agency, board, executive, court, commission, department, legislature, tribunal, instrumentality or administration of the United States, a foreign country or the State of Florida or any other State, provincial, territorial, municipal, local or other governmental entity in the United States or the Public Utilities Commission of any State or a foreign country.

**Holder** shall mean (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as shown on the schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has transferred the Claim to a third party and advised the Debtor or the Reorganized Debtor in writing of such transfer and provided sufficient written evidence of such transfer, the transferee; and (b) as to any Equity Interest, the record owner or

holder of such Equity Interest as shown on the stock register maintained by the Debtor or the Transfer Agent or as otherwise determined by the Bankruptcy Court.

**Impaired** shall mean, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, or other equity instruments in the Debtor.

**Liabilities** shall mean any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due, payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen and unforeseen, in law, equity or otherwise, of or relating to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, of any assets of the Debtor, the business or operations of the Debtor, the Chapter 11 Case, or the Plan, including any liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtor or any other party with standing to bring such a challenge.

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Nonconsensual Plan** shall mean a plan that meets all applicable requirements in § 1129(a) of the Bankruptcy Code, except for those in paragraphs (8), (10), and (15), and at least one Class of Claims has submitted ballots voting to reject the plan, as determined in accordance with § 1126 of the Bankruptcy Code.

**Objection Deadline** shall mean the date by which objections to Claims and Interests must be filed with the Bankruptcy Court; to wit, 60 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtor; provided, however, that any due and unpaid post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

**Petition Date** shall mean July 5, 2023, the date on which the petition for relief was filed in the Debtor's Chapter 11 Case.

**Plan** shall mean this chapter 11 Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Bankruptcy Code.

**Plan Payment** shall mean payments made by the Reorganized Debtor pursuant to the terms of the Plan.

**Plan Administrator** shall mean the law firm of Michael H. Moody Law, P.A. on and after the effective date.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Non-Tax Claim** shall mean a Claim entitled to priority pursuant to §§507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code.

**Priority Tax Claim** shall mean a Claim entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code.

**Professional** shall mean (i) any professional retained in the Chapter 11 Case pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to §1129(a)(4) of the Bankruptcy Code.

**Released Party** means each of the following in its capacity as such: (a) the Debtor; (b) the DIP Lender; and (c) with respect to each of the foregoing entities in clauses (a) through (c), such entity's current and former subsidiaries, predecessors, successors, assigns, heirs, agents, equity holders, principals, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and their current and former affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

**Releasing Party** means each of the following in its capacity as such: (a) the DIP Lender; (b) those holders of Claims and Equity Interests that are Unimpaired and deemed to accept the Plan; (c) all holders of Claims and Equity Interests who vote to accept the Plan and do not elect on their Ballot to opt out of the third-party release by checking the box on its timely submitted Ballot; (d) with respect to each of the foregoing entities in clauses (a) through (c), such entity's current and former managed and controlled affiliates, and such entity's and its affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors,

attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (e) each of the Debtor's current and former affiliates, and each of the Debtor's and its current and former affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

**Reorganized Debtor** shall mean Full-Circle Athlete, LLC, following the Effective Date.

**Rule or Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable nonbankruptcy law. A Secured Claim which is challenged by the Debtor shall only be Allowed to the extent that such claim is deemed to be Allowed in the Plan or the underlying security interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditors Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Secured Rate** shall be 6%

**Security Interest** shall mean "security interest" as defined in § 101(51) of the Code.

**Substantial Consummation** shall be when distribution commences under the Plan.

**Trustee** means the trustee to be appointed in this case pursuant to 11 U.S.C. § 1183 (a).

**Unimpaired Claim** shall mean a Claim that is not impaired within the meaning of § 1124 of the Bankruptcy Code.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21, located in the Middle District of Florida, Orlando, Florida.

**Unsecured Claim** shall mean a Claim other than an Administrative Expense, a Priority Non-Tax Claim, a Priority Tax Claim, a Secured Claim, or an Equity Interest.

**WCR** means Working Capital Reserve. The WCR is $60,000.00.

### ARTICLE 10 OTHER PROVISIONS

The Debtor's ability to implement this Plan is contingent on the Court's approval of key provisions of the Plan that are intended to incentivize the maximization of value for the Debtor's creditors and constituents, as follows:

**Section 10.01: 506(c) Surcharge:** Section 506(c) of the Bankruptcy Code allows the trustee to recover from property securing an allowed secured claim the reasonable, necessary cost

and expense of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property. The Debtor's Plan requires the Debtor to undertake a series of actions intended to maximize the value of the collateral for the benefit of the Debtor's creditors and other constituents. The Plan requires the Court to approve a surcharge of the Celtic Bank collateral to the extent necessary to enable the marketing of the Debtor's assets by the Weeks Auction Group and the services of counsel to thee Debtor to effectuate the Plan. Up to $75,000 of the value obtained from the sale of Celtic Bank's collateral may be surcharged as necessary to cover the cost of the administration of the Plan and marketing by the Weeks Auction Group.

**Section 10.02  Releases by the Debtor. Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or arising from intentional fraud, gross negligence, or willful misconduct, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtor and the Estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor or its affiliates, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Equity Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, the Sale Order, the Purchaser Agreement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor taking place on or before the Effective Date.**

**Section 10.03  Releases by Holders of Claims and Interests**. **As of the Effective Date, except as otherwise provided in the Plan or arising from intentional fraud, gross negligence, or willful misconduct, the Releasing Parties are deemed to have released the Debtor and the Estate from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any direct claims held by any of the Releasing Parties against the Debtor and the Estate or derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor or its affiliates, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Sale Order, the Purchase Agreement, or related agreements, instruments, or other documents, or upon any other act or omission,**

**transaction, agreement, event, or other occurrence relating to the Debtor taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Section 10.04  Injunction.**

(a) **Satisfaction of Claims. The treatment to be provided for Allowed Claims shall be in full satisfaction, settlement, and release of each such Claim.**

(b) **Scope of Injunction. Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim are permanently enjoined from taking any of the following actions against the Debtor, the Plan Administrator, or any present and former directors, officers, trustees, agents, attorneys, advisors, members, or employees of the Debtor, or the Plan Administrator, or any of their respective successors or assigns, or any of their respective assets or properties, on account of any Claim: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory which arises out of such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to a Claim; (iii) creating, perfecting, or enforcing any lien or encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation, or recoupment of any kind with respect to a Claim, the assets, or other property of the Estate; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Case is closed, from seeking discovery in actions against third parties, or from pursuing third-party insurance that does not cover Claims against the Debtor. For the avoidance of doubt, nothing in this injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan.**

(c) **Release of Collateral.** Except as expressly provided herein, unless a holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan: (i) each holder of (A) an Allowed Secured Claim; and/or (B) an Allowed Claim that is purportedly secured, on the Effective Date shall (1) turn over and release to the Debtor any and all property that secures or purportedly secures such Claim; and (2) execute such documents and instruments as the Plan Administrator requires to evidence such claimant's release of such property; and (ii) on the Effective Date, all claims, rights, title, and interest in such property shall revert to the Debtor, free and clear of all Claims, including (without limitation) Liens, charges, pledges, encumbrances, and/or security interests of any kind. No Distribution shall be made to or on behalf of any holder of such Claim unless and until such holder executes and delivers to the Plan Administrator such release of Liens. Any such holder that fails to execute and deliver such release of Liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder. Notwithstanding the immediately preceding sentence, a holder of a Disputed Claim shall not be required to execute and deliver such release of Liens until the time such Claim is Allowed or disallowed.

(d) **Cause of Action Injunction. On and after the Effective Date, all Persons other than the Plan Administrator will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any claim, debt, right, or Cause of Action that the Plan Administrator retains authority to pursue in accordance with the Plan**.

(e) **Exculpation. Except as otherwise set forth in the Plan, neither the Debtor, nor any Released Party, nor any of their respective current or former members, directors, officers, trustees, employees, agents (acting in such capacity), advisors, attorneys, nor representatives of any professional employed by any of them shall have or incur any liability to any Person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, the Sale Order, the Purchase Agreement, or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the Plan or property to be distributed pursuant to the Plan, the Sale Transaction, and actions taken or omitted to be taken in connection with the Chapter 11 Case or the operations, monitoring, or administration of the Debtor during the Chapter 11 Case, and the Plan Administrator shall have no liability for any action taken or omitted to be taken in connection with or related to the winding down and post-confirmation administration of the Estate, except for (i) intentional fraud, gross negligence, or willful misconduct, and (ii) solely in the case of attorneys, to the extent that such exculpation would violate any applicable professional disciplinary rules, including Disciplinary Rule 6-102 of the Code of Professional Conduct.**

# EXHIBIT B
# LIQUIDATION ANALYSIS

**Full-Circle Athlete, LLC**
**Case No. 23-40240-KKS**
**Liquidation Analysis Summary**

As of October 3, 2023

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.

The debtor owns no real property. The personal property it owns consists of sorinax gym equipment and cash. On the date of the filing it scheduled bank account balances totaling $15,308.25 and equipment totaling $100,241.89. The cash and equipment are encumbered by liens in favor of Celtic Bank. If this case were to convert to Chapter 7, the debtor estimates no cash would be available for unsecured creditors. By contrast, the Debtor's Plan provides payment of at least $15,000 to unsecured creditors with pro rate payment starting on the effective date.

|  | **Chapter 11 Plan** | **Chapter 7 Liquidation** |
|---|---|---|
| **Assets** | | |
| Cash in Operating Account | $15,308.25 | $15,308.25 |
| Litigation Claims | Unknown value | Unknown value |
| Other Assets | $100,241.89 | $100,241.89 |
| Chapter 11 Unsecured Plan Payments | $15,000.00 | $0.00 |
| **Total Assets** | **$130,550.14** | **$115,241.89** |
| | | |
| **Liabilities** | | |
| **Liquidation Costs** | | |
| Accrued Admin / Professional Fees | $25,000.00 | $20,000.00 |
| Chapter 7 Admin / Professional Fees | $0.00 | $10,000.00 |
| Chapter 7 Trustee Fee | $0.00 | $8,250.00 |
| **Net Liquidation Proceeds** | **$105,550.14** | **$76,991.89** |
| | | |
| **Distribution of Proceeds** | | |
| Celtic Bank Secured Claim | $90,550.14 | $76,550.14 |
| Priority Claims | $0.00 | $0.00 |
| **Net Proceeds for Unsecured Creds** | **$15,000.00** | **$0.00** |